IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Kenneth M. Mears, | ) | C/A No. 3:10-1419-MBS-PJG |
| Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| South Carolina Law Enforcement Division, | ) | |
| Defendant. | ) | |

The plaintiff, Kenneth M. Mears ("Mears"), brings this action against his former employer, the South Carolina Law Enforcement Division ("SLED"). This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendant's motion for summary judgment with regard to Mears's only remaining claim, alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. Mears filed a response in opposition (ECF No. 37) to the defendant's motion and SLED filed a reply (ECF No. 38). Having reviewed the parties' submissions and the applicable law, the court finds that SLED's motion should be granted.

**BACKGROUND**

The following facts are either undisputed or are taken in the light most favorable to Mears, to the extent they find support in the record. Mears, who is African American, is a former law enforcement agent employed by SLED from 1994 until his retirement in June of 2007. Pursuant to a so-called "retiree rehire" program under state law—informally referred to as the "LERI" program—Mears retired with twenty-five years of service and, after a requisite brief separation from

Page 1 of 8

PJG

employment, was rehired by then-SLED Chief Robert Stewart. See generally Grimsley v. S.C. Law Enforcement Div., 721 S.E.2d 423, 425 (S.C. 2012) (describing the LERI program under S.C. Code Ann. § 9-11-90). The LERI program permits the Chief of SLED to rehire a retired agent for a period of forty-eight months at a reduced salary. Under the LERI program, agents retire without any guarantee of rehire. If rehired, they serve as at-will employees with no state employee grievance rights. SLED agents participating in the LERI program receive both their retirement pension through the State Police Officers Retirement System ("PORS") and a salary from SLED.

Chief Stewart retired at the end of 2007 and was ultimately succeeded by Chief Reginald Lloyd, who is African American. Due to a downturn in the economy and significantly reduced state budget appropriations, Chief Lloyd was immediately confronted with budget cuts for the state fiscal year beginning July 1, 2008. As a cost reducing measure, Lloyd decided to discontinue the employment of twelve retired, at-will agents participating in the LERI program, in part because he considered that agents who were also drawing their retirement pensions would be better able to sustain the loss of their jobs than non-retired agents dependent solely on their salaries. (See generally Lloyd Aff. ¶ 6, ECF No. 29-6 at 3.) Seven of the agents identified for termination were white; five, including Mears, were African American. Three months after Mears's termination, a white agent was promoted into Mears's former position.

## DISCUSSION

**A.   Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing

to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks & citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

*PJG*

**B.	Burden Shifting Framework in Employment Cases**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

PJG

## C. Mears's Race Discrimination Claim

SLED correctly asserts that it is entitled to summary judgment because on this record, no reasonable jury could find that race actually motivated its decision. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 286 (4th Cir. 2004) (*en banc*). First, Mears conceded at his deposition that he had no factual information to support his allegation that Lloyd terminated him because of his race. (Mears Dep. at 78:22-79:1, ECF No. 29-2 at 49-50.) In fact, the undisputed evidence shows that Mears and Lloyd never met and that Lloyd had no knowledge of Mears's race when he made the decision to discontinue Mears's employment. See Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987) (holding that a Title VII disparate treatment claim failed where it was undisputed that the decision maker did not know the plaintiff's race); see also Woodman v. WWOR-TV, Inc., 411 F.3d 69, 81-83 (2d Cir. 2005) (holding that an ADEA claim failed for lack of proof of the decision maker's knowledge that the plaintiff's replacement was substantially younger); Lubetsky v. Applied Card Sys., Inc., 296 F.3d 1301, 1305-07 (11th Cir. 2002) (holding that a Title VII claim of religious discrimination failed for lack of proof of the decision maker's knowledge of the plaintiff's religion). Further, Lloyd, the undisputed decision maker in this case, is—like Mears—African American. See Demesme v. Montgomery Cnty. Gov't, 63 F. Supp. 2d 678, 683 (D. Md. 1999) (Title VII) ("The fact that the decision makers were of the same protected class [as the plaintiff] suggests no discriminatory motivation."), aff'd *per curiam*, 208 F.3d 208 (4th Cir. 2000); see also Coggins v. Gov't of District of Columbia, 1999 WL 94655, at *4 (4th Cir. 1999) (Table) ("The fact that both Krull and Gibbons, first and third in [Plaintiff's] chain-of-command, are both Caucasian makes any anti-Caucasian bias unlikely.").

*PJG*

Moreover, even assuming Mears can establish a *prima facie* case of race discrimination under the McDonnell Douglas framework, the record does not support his suggestion that SLED's proffered legitimate, nondiscriminatory reason for his termination is pretextual. See Adams v. Trs. of the Univ. of N. Carolina-Wilmington, 640 F.3d 550, 559-60 (4th Cir. 2011) (holding that a plaintiff cannot rely on his own, unsupported conjecture but rather must identify evidence that would support a finding that the real reason he was terminated was his race). Here, the sole evidence relied upon by Mears to establish pretext is that SLED allegedly eliminated all but one African American LERI participant[1] and added twenty-four agents during the latter half of 2008, which Mears contends demonstrates that budget reductions were not the true reason for Mears's termination. This evidence, however, is insufficient for a reasonable jury to find that Mears was the victim of intentional race discrimination. See Merritt, 601 F.3d at 294-95. First, statistics without context are insufficient to show pretext. See Carter v. Ball, 33 F.3d 450, 457 (4th Cir. 1994) (stating that judges may disregard statistical evidence offered without expert testimony as to the methodology or relevance to the plaintiff's claim); see also Vaughan v. MetraHealth Cos., Inc., 145 F.3d 197, 203 (4th Cir. 1998), overruled in part on other grounds by Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); see generally Moultrie v. Martin, 690 F.2d 1078, 1082-83 (4th Cir. 1982) (discussing the appropriate statistical methodology to use when drawing conclusions from statistical evidence). In any event, the undisputed evidence shows that although SLED hired twenty-four agents between June and December of 2008, at least eighty agents left the agency through resignation, retirement, or other reasons. Thus, the only evidence in the record shows that SLED replaced less than one-third

---

[1] SLED disputes this fact, but for purposes of this motion the court views it in the light most favorable to Mears.

Page 6 of 8



of the agents lost during that time period. Placed in context, the number of agents hired by SLED in the latter half of 2008 is not logically probative of the inference Mears seeks to have drawn: that budget cuts were not the real reason for his termination.

### RECOMMENDATION

No reasonable jury could find on this record that SLED's legitimate, nondiscriminatory reason is false or that race was the true reason Mears's employment was terminated. Merritt, 601 F.3d at 294-95. The court therefore recommends that SLED's motion for summary judgment be granted. (ECF No. 29.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 10, 2012
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).