## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| Kenneth M. Mears, | ) | Civil Action No. 3:10-01419-MBS |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| South Carolina Law Enforcement | ) | **ORDER AND OPINION** |
| Division, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Kenneth M. Mears ("Plaintiff") filed this action against his former employer, the South Carolina Law Enforcement Division ("SLED"), alleging race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2000e-17.[1] (ECF No. 1.) This matter is before the court on a motion for summary judgment pursuant to Fed. R. Civ. P. 56 by SLED, which motion was filed on January 17, 2012. (ECF No. 29.) Plaintiff opposes SLED's motion, asserting that SLED has failed to show that it is entitled to judgment as a matter of law on his claim. (ECF No. 37.)

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02 D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling. On July 10, 2012, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant SLED's motion for summary judgment. (ECF No. 39.) Plaintiff filed objections to the Report and Recommendation asking the court to reject the Magistrate Judge's recommendation. (ECF No. 43.) For the reasons set forth below, the court adopts the Report

---

[1] In his complaint, Plaintiff originally alleged a cause of action against SLED for age discrimination in violation of Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, and a cause of action pursuant to 42 U.S.C. §§ 1981, 1983, and 1985 against three employees of SLED, Roger Heaton, Larry Gainey, and Timothy James, in their official and individual capacities. (ECF No. 1.) Plaintiff stipulated to the dismissal of these claims. (See ECF Nos. 19, 24.) For the purposes of this order, the court will only reference Plaintiff's remaining claim for race discrimination.

and Recommendation of the Magistrate Judge and **GRANTS** SLED's Fed. R. Civ. P. 56 motion for summary judgment as to Plaintiff's claim.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts as viewed in the light most favorable to Plaintiff are discussed in the Report and Recommendation.  The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate.  The court adopts this summary as its own, and will only reference facts pertinent to the analysis of Plaintiff's claims.

Plaintiff is an African-American male.  (ECF No. 1, p. 2.)  On January 3, 1994, Plaintiff was hired by SLED as a criminal investigator in the Lowcountry Region (Charleston, South Carolina), after having worked in law enforcement with the City of Walterboro (South Carolina) Police Department.  (ECF No. 29-2, pp. 5-6, 11.)  Plaintiff worked for SLED until he voluntarily retired on June 30, 2007.  (Id. at pp. 13-14, 55.)

During his employment with SLED, Plaintiff learned about an optional retirement program, identified as "LERI" or the "Law Enforcement Retirement/Retention Plan," from then-SLED Director Robert Stewart ("Stewart").  (Id. at pp. 12-13.)  "The [LERI] program required . . . [an applicant] to retire from SLED and to separate from employment for a period of time." Grimsley v. SLED, 721 S.E.2d 423, 425 (S.C. 2012).  The applicant "then had to request to be rehired by SLED."  Id.  "Upon SLED's approval, . . . [the applicant] would be rehired [as an at will employee] for a period not to exceed forty-eight months.  Id.  "As part of the rehire process, SLED required . . . [the applicant] to sign a form, which provided that Appellants 'will have a reduction of 13.6% in [their] salary to cover the amount it will cost SLED to pay the employer portion of retirement.'"  Id.  The conditions for rehire were communicated to an applicant in

documents provided during the rehiring process and after the applicant was rehired.  (See ECF No. 29-2, pp. 56, 58.)

After retiring, Plaintiff was rehired by SLED as a LERI participant on August 17, 2007, pursuant to the LERI program.  (ECF Nos. 29-2, pp. 12-25, 56-57; 29-5, pp. 5-10.)  After Plaintiff was rehired by SLED, his income consisted of two checks from the State of South Carolina: one check was from Plaintiff's monthly retirement pension through the State Police Officers Retirement System ("PORS") and the second check was a salary check from SLED. (ECF No. 29-2, pp. 20-21, 23-25.)

Stewart retired as head of SLED at the end of 2007.  (Id. at pp. 26-27.)  Mark Keel succeeded Stewart on an interim basis until February 2008, when Reginald Lloyd ("Lloyd"), an African-American male, took office as Director of SLED.  (Id. at pp. 27, 36-37.)  Upon taking office, Lloyd faced an immediate cut in SLED's funding for the fiscal year beginning July 1, 2008, due to the state's deteriorating economic situation.  (ECF No. 29-6, p. 2.)  As a cost reducing measure, Lloyd decided in June 2008 to discontinue the employment of twelve retired, rehired agents participating in the LERI program.  (ECF No. 29-6, pp. 34.)  Lloyd chose these twelve agents in part because they were also drawing their retirement pensions in addition to their SLED paychecks and would be better able to sustain the loss of their jobs as opposed to non-retired agents, who were entirely dependent on their SLED salaries.  (Id.)  On June 2, 2008, Plaintiff was informed that his job was terminated, effective June 16, 2008.  (ECF No. 29-2, p. 59.)  Seven of the agents identified by Lloyd for termination were white; five, including Plaintiff, were African American.  (ECF Nos. 29-5, pp. 25-26, 44.)

Three months after Plaintiff's termination, Brian Bolchoz, a Causasian male, was promoted to lieutenant in the Lowcounty Region, which position Plaintiff used to occupy.  (ECF

3

No. 29-3, p. 16.)  Lloyd promoted Bolchoz because the Lowcountry Region needed an additional proactive case supervisor.  (ECF No. 29-6, p. 4.)

On August 22, 2008, Plaintiff filed an administrative charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") and the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that he was "discharged on or about June 16, 2008" as the result of "a management decision," and he and a fellow African-American (female) were the only individuals terminated while "many white and younger TERI employees . . . were retained . . . ."  (ECF No. 29-2, p. 72.)  After filing his charge, Plaintiff commenced this action on June 2, 2010.  (See ECF No. 1.)  Plaintiff's complaint was answered by SLED on July 8, 2010.  (ECF Nos. 5.) On January 17, 2012, SLED moved for summary judgment pursuant to Fed. R. Civ. P. 56 as to Plaintiff's claims.  (ECF No. 29.)  Plaintiff filed opposition to SLED's motion on February 22, 2012, to which SLED filed a reply in support of the motion on March 5, 2012.  (ECF Nos. 37, 38.)

## II.    LEGAL STANDARD AND ANALYSIS

### A.    Standard

#### 1.    Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to—including those portions to which only "general and conclusory" objections have been made—for clear error.  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198,

200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions.  See 28 U.S.C. § 636(b)(1).

      2.     Summary Judgment

     Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248–49 (1986).  A genuine question of material fact exists where, after reviewing the record as a whole, the court finds that a reasonable jury could return a verdict for the nonmoving party. Newport News Holdings Corp. v. Virtual City Vision, 650 F.3d 423, 434 (4th Cir. 2011).

     In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).  The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial.  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991).  All that is required is that "sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  Anderson, 477 U.S. at 249.  "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion."  Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 62 (4th Cir. 1995).  A party cannot create a genuine issue of material fact solely with conclusions in his or her own affidavit or deposition that are not

5

based on personal knowledge.  See Latif v. The Community College of Baltimore, No. 08-2023, 2009 WL 4643890, at *2 (4th Cir. Dec. 9, 2009).

        3.        Claims of Discrimination under Title VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; . . . ."  42 U.S.C. § 2000e-2(a)(1).  A plaintiff can establish claims of discrimination under Title VII in one of two ways, either by directly showing that discrimination motivated the employment decision, or, as is more common, by relying on the indirect, burden-shifting method set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Where there is direct evidence of discrimination, the McDonnell Douglas burden-shifting framework does not apply.  Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985).

If a plaintiff cannot present direct evidence of discrimination, he can proceed using the McDonnell Douglas method of proof.  Pursuant to this burden-shifting framework, once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for its employment action.  Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010).  If the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason for its employment action, the burden shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the proffered reason was "not its true reason[ ], but [was] a pretext."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253  (1981).  Though intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuasion that the defendant engaged in intentional

6

discrimination remains at all times with the plaintiff.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

**B.**      **Analysis of Plaintiff's Claim of Race Discrimination**

Plaintiff filed this action, alleging that SLED unlawfully discriminated against him because of his race when it terminated his employment.  To prove a prima facie case of race discrimination, Plaintiff must prove that (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class."  Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004).

Upon her review, the Magistrate Judge concluded that SLED is entitled to summary judgment  because "no reasonable jury could find that race actually motivated its decision [to terminate Plaintiff's employment]."  (ECF No. 39, p. 5 (citing Hill, 354 F.3d at 286).)  In support of this conclusion, the Magistrate Judge found that "the undisputed evidence shows that . . . [Plaintiff] and Lloyd never met and that Lloyd had no knowledge of . . . [Plaintiff's] race when he made the decision to discontinue . . . [Plaintiff's] employment."  (Id.)  The Magistrate Judge further found that like Plaintiff, Lloyd, the undisputed decision-maker of SLED regarding Plaintiff's termination, was also African-American.  (Id.)

The Magistrate Judge also found that even if Plaintiff could establish a prima facie case of race discrimination, SLED met its burden under McDonnell Douglas to produce evidence from which a jury could conclude that Defendant had a legitimate, nondiscriminatory reason for Plaintiff's termination.  (Id. at p. 6.)  In this regard, the Magistrate Judge found that Plaintiff could not demonstrate a genuine issue of material fact as to whether SLED's proffered reason for

7

terminating Plaintiff was merely a pretext for discrimination.  (Id.)  Specifically, the Magistrate Judge determined that Plaintiff could not establish pretext with his unsupported allegation that "SLED eliminated all but one African American LERI participant and added twenty-four agents during the latter half of 2008, which . . . demonstrates that budget reductions were not the true reason for . . . [Plaintiff's] termination."  (Id.)  Accordingly, the Magistrate Judge recommended granting SLED's motion for summary judgment on Plaintiff's race discrimination claim.  (Id. at p. 7.)

In his objections to the Magistrate Judge's recommendation, Plaintiff asserts that the Magistrate Judge erred in concluding that no reasonable jury could find that race motivated SLED's decision to terminate Plaintiff.  (ECF No. 43, p. 2.)  In support of his assertion, Plaintiff argues that he has established a prima facie case of race discrimination with evidence showing that he is African American; he was discharged from employment with SLED; he was performing his job at levels exceeding the expectations of SLED; and his termination occurred under circumstances that raise an inference of unlawful discrimination because he was one of the fifty percent of African American, LERI program participants who were terminated before serving their forty-eight months.  (Id. at p. 4.)  Plaintiff further argues that he can show that race was a motivating factor in this termination, unlike the plaintiff in Robinson v. Adams, 847 F.2d 1315, 1316 (9th Cir. 1987), cited by the Magistrate Judge, because Plaintiff's race was known to the individuals in charge of making the decision to terminate his employment.  (Id. at pp. 3, 5.) In this regard, Plaintiff asserts that the issue of Lloyd's credibility in knowing or not knowing about Plaintiff's race should be tried by a jury and "the fact that . . . [Plaintiff's] supervisor was an African American does not exclusively preclude a jury from finding discriminatory intent." (Id. at p. 3.)

8

In addition to the foregoing, Plaintiff also asserts that the Magistrate Judge erred in finding that Plaintiff could not prove that SLED's proffered explanation for his termination was pretextual.  (Id. at p. 5.)  In support of his contention that SLED's, budget cuts were not the actual reason for his termination, Plaintiff alleges that the following statistics regarding the LERI program terminations supports a finding of pretext: (1) 42% of the twelve LERI program agents terminated by Lloyd were African-American; (2) Of forty-four LERI program agents remaining employed after Plaintiff was terminated, only three of those agents were African-Americans and two of those African-Americans were later terminated from the program; (3) Plaintiff, an African-American, was terminated as a LERI program participant from the Lowcountry Region while John Branham, a Caucasian male, was retained; and (4) Plaintiff was informed that the LERI program was being eliminated when it was not as applicants continued to be employed in the LERI program after Plaintiff's termination.  (Id. (citing ECF Nos. 37-1, pp. 23-26; 37-3, pp. 10-13.))  As a result of this evidence of pretext, Plaintiff urges the court to reject the Magistrate Judge's recommendation and deny SLED's motion for summary judgment.

To survive a motion for summary judgment even if he can establish a prima facie case of discrimination, the plaintiff has to come forward with sufficient evidence to demonstrate that the legitimate reason offered by the defendant was not its true reason, but was a pretext for discrimination.  "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."  Anderson v. Ziehm Imaging, Inc., C/A No. 7:09-02574-JMC, 2011 WL 1374794, at *5 (D.S.C. Apr. 12, 2011) (citing Stewart v. Henderson, 207 F.3d 374, 376 (7th Cir. 2000)).  "The ultimate question is whether the employer intentionally discriminated and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's]

proffered reason . . . is correct . . . [i]t is not enough to disbelieve the [employer]." Love-Lane v. Martin, 355 F.3d 766, 788 (4th Cir. 2004) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146-47 (2000)) (internal citations omitted). Rather, the plaintiff must demonstrate that a reasonable jury could "believe [his] explanation of intentional race discrimination." Id.

The court agrees with the Magistrate Judge that there is insufficient evidence to support a finding that Plaintiff's termination was motivated by his race. The court finds that Plaintiff's statistical evidence as highlighted in his objections to the Magistrate Judge's Report and Recommendation does not rise to the level necessary to establish that his race actually played a role in the decision-making process and had a determinative influence on the outcome. In this regard, the court does not find merit in Plaintiff's argument that pretext is established by the statistics regarding the LERI program terminations. (See ECF No. 59, pp. 5-6.) The court's sole concern at the pretext stage is whether the reason for which the defendant terminated the plaintiff was discriminatory. Love-Lane v. Martin, 355 F.3d 766, 789 (4th Cir. 2004) ("Because, on the one side, there is substantial evidence that the defendants' articulated justifications for Love-Lane's dismissal were not pretext for race discrimination and, on the other side, there is only Love-Lane's unsupported opinion that her reassignment was based on improper discriminatory intent, we cannot conclude that she has proffered evidence of pretext sufficient to withstand the defendants' motion for summary judgment on the discrimination claims."). Based on the foregoing, the Magistrate Judge correctly found that Plaintiff has not produced sufficient evidence to meet his burden of proving that the reasons asserted for his termination were a pretext for race discrimination. Accordingly, Plaintiff's Title VII race discrimination claim fails as a matter of law and summary judgment should be granted to SLED as to this cause of action.

### III.  CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS** SLED's motion for summary judgment with respect to Plaintiff's claim for race discrimination in violation of Title VII.  The court adopts the Magistrate Judge's Report and Recommendation and incorporates it herein by reference.

**IT IS SO ORDERED**.

/s/Margaret B. Seymour
MARGARET B. SEYMOUR
CHIEF UNITED STATES DISTRICT JUDGE

September 25, 2012
Columbia, South Carolina

11